# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:23-cv-00609-SP

MOTTO FRANCHISING, LLC,

  Plaintiff,

v.

UMortgage LLC,

  Defendant.

---

## UMORTGAGE'S MOTION TO DISMISS AND MEMORANDUM OF LAW IN SUPPORT

---

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ............................................................................. 1

BACKGROUND ............................................................................................... 2

LEGAL STANDARD......................................................................................... 5

ARGUMENT .................................................................................................... 6

I.      THIS COURT DOES NOT HAVE GENERAL OR SPECIFIC PERSONAL
        JURISDICTION OVER UMORTGAGE. ........................................................ 6

        A.      The Court Does Not Have General Jurisdiction Over UMortgage....................... 6

        B.      The Court Does Not Have Specific Jurisdiction Over UMortgage. ..................... 8

                1.      Motto has not alleged that UMortgage possesses sufficient in-state
                        contacts to have purposefully availed itself of the privilege of
                        conducting activities in Colorado. .............................................. 9

                2.      Motto's alleged injury does not arise out of UMortgage's alleged
                        activities in Colorado. ............................................................ 10

II.     THE COMPLAINT FAILS TO STATE A CLAIM FOR TORTIOUS
        INTERFERENCE. ................................................................................ 11

        A.      Motto's Complaint Must Be Dismissed Because It Has Not Pled That
                UMortgage Intentionally Procured A Breach Of The Franchise
                Agreement. ............................................................................... 12

        B.      Motto's Complaint Must Be Dismissed Because It Never Alleges An
                *Actual Breach* Of The Franchise Agreement...................................... 14

        C.      Motto's Complaint Must Be Dismissed Because It Does Not Allege That
                UMortgage Acted Improperly........................................................... 15

CONCLUSION.................................................................................................. 19

FP 47062371.1

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...................................................................................5

*BCG Masonic Cleveland, LLC v. Live Nation Ent. Inc.*,
  570 F. Supp. 3d 552 (N.D. Ohio 2021)...............................................14

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)...............................................................................5, 15

*BNSF Ry. Co. v. Tyrrell*,
  581 U.S. 402 (2017)...................................................................................7

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985)...................................................................................6

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014)...................................................................................7

*Dental Dynamics, LLC v. Jolly Dental Group, LLC*,
  946 F.3d 1223 (10th Cir. 2020) ..............................................................8

*Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*,
  514 F.3d 1063 (10th Cir. 2008) ............................................................8, 9

*Eagle Valley Clean Energy, LLC v. Wellons, Inc.*,
  2019 WL 427609 (D. Colo. Feb. 4, 2019) .......................................13, 16

*Farkas v. Rich Coast Corp.*,
  2014 WL 550594 (W.D. Pa. Feb. 11, 2014) .........................................9

*FidoTV Channel, Inc. v. Inspirational Network, Inc.*,
  2019 WL 4043940 (D. Colo. Apr. 29, 2019) .......................................13

*Fred Siegel Co., L.P.A. v. Arter & Hadden*,
  707 N.E.2d 853 (Ohio Sup. Ct. 1999)...................................................11

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
  564 U.S. 915 (2011)...........................................................................6, 7, 8

*Hampton-Meridian Grp., Inc. v. Venturella*,
  2008 WL 2446697 (W.D. Pa. June 16, 2008)........................................9

*Hamric v. Wilderness Expeditions, Inc.*,
  6 F.4th 1108 (10th Cir. 2021) ............................................................... 11

*Harris Group, Inc. v. Robinson*,
  209 P.3d 1188 (Colo. App. Div. VI 2009) ............................................. 15

*Henson v. Bank of America*,
  935 F. Supp. 2d 1128 (D. Colo. 2013) .................................................... 2

*Hertz v. Luzenac Grp.*,
  576 F.3d 1103 (10th Cir. 2009) ............................................................. 11

*J.L. v. Best Western Int'l, Inc.*,
  521 F. Supp. 3d 1048 (D. Colo. 2021) ................................................. 6, 7

*Mackey v. Hilkey*,
  2022 WL 1198002 (D. Colo. Apr. 22, 2022) ........................................... 5

*Nat'l Business Brokers, Ltd. v. Jim Williamson Prods, Inc.*,
  115 F. Supp. 2d 1250 (D. Colo. 2000), *aff'd*, 16 F.Appx 959 (10th Cir. 2001) ...................... 6

*Nobody in Particular Presents, Inc. v. Clear Channel Commc'ns, Inc.*,
  311 F. Supp.2d 1048 (D. Colo. 2004) ............................................ *passim*

*Phillips v. Carpet Direct Corp.*,
  2017 WL 121630 (D. Colo. 2017) ................................................ 14, 15, 17, 18

*Pilgrim's Pride Corp. v. ASFI, Inc.*,
  2006 WL 984695 (E.D. Tex. Apr. 13, 2006) ........................................... 9

*Radiology Pro. Corp. v. Trinidad Area Health Ass'n, Inc.*,
  577 P.2d 748 (Colo. 1978) (en banc) ............................................... 14, 15

*Steel Co. v. Citizens for Better a Env't*,
  523 U.S. 83 (1998) ................................................................................... 4

*Storlie v. Prudential Ins. of America*,
  2020 WL 209859 (D. Colo. Jan. 14, 2020) ............................................ 14

*Time Share Vacation Club v. Atlantic Resorts Ltd.*,
  735 F.2d 61 (3d Cir. 1984) ...................................................................... 9

*U.S. Olympic Committee v. American Media, Inc.*,
  156 F. Supp. 2d 1200 (D. Colo. 2001) .................................................... 2

*Vora v. Dionne*,
  2023 WL 1784227 (D. Colo. Feb. 6, 2023) .............................................. 5

iii

*Walden v. Fiore*,
   571 U.S. (2014) .................................................................................................8, 9, 10

*White v. Christian*,
   474 F. Supp. 3d 1196 (D. Colo. 2020) ...........................................................................8

*World-Wide Volkswagen Corp. v. Woodson*,
   444 U.S. 286 (1980) ......................................................................................................6

**Statutes & Rules**

Fed. R. Civ. P. 8 ........................................................................................................................5

Fed. R. Civ. P. 12(b)(2) ............................................................................................................4, 5

Fed. R. Civ. P. 12(b)(6) ............................................................................................................1

RESTATEMENT (SECOND) OF TORTS § 766–768 (Am. L. Inst. 1979) ...........................................11

FP 47062371.1

Defendant UMortgage, LLC ("UMortgage") submits this motion and memorandum of law in support to dismiss Motto Franchising, LLC's ("Motto") Complaint for lack of personal jurisdiction or in the alternative, failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(2) and Fed. R. Civ. P. 12(b)(6), respectively.[1]

## PRELIMINARY STATEMENT

Simply put, Motto's Complaint is a corporate case of buyer's remorse. In short, Motto alleges, that it negotiated and agreed to terminate a franchise agreement with a franchisee, expressly agreed that the franchisee would leave Motto for UMortgage, collected and deposited the nearly $200,000 termination fee, and is now suing because it regrets that business decision. But, Motto cannot use the legal system for a "do-over."

Given the background, it is no surprise that Motto's Complaint fails to allege any non-conclusory facts in support of its sole cause of action: tortious interference with a contract. In sum, Motto alleges that its franchisee inquired with Motto about terminating its Franchise Agreement and that Motto agreed. Nothing else. Motto does not allege any facts in support of the critical elements necessary to plead a tortious interference claim. Motto wholly fails to allege that UMortgage intentionally procured a breach of a contract—let alone that UMortgage acted improperly. Nor does Motto allege, even in a conclusory claim, that there ever was a breach of the Franchise Agreement—or that UMortgage acted improperly. Any one of these pleading failures is sufficient to dismiss this action for Motto's failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

---

[1] This matter was recently transferred from Magistrate Judge Neureiter to Magistrate Judge Prose. Magistrate Neureiter required conferral on Motions submitted under Rule 12. To the extent Magistrate Judge Prose's practice standards will require conferral, Counsel conferred with Counsel for Motto, who opposes this Motion.

1

However, even if the Court determined that Motto sufficiently pled its claim—and it has not—this Court should dismiss Motto's Complaint because this Court lacks personal jurisdiction over UMortgage pursuant to Fed. R. Civ. P. 12(b)(2).  This Court cannot exercise general jurisdiction over UMortgage because UMortgage is not at home in Colorado.  Neither does UMortgage have a connection to Colorado sufficient to exercise specific jurisdiction over the company.  Indeed, UMortgage is a Michigan limited liability company and its principal place of business is in Pennsylvania.  The relevant franchise and franchisees are located in Ohio.  Any purported conduct necessarily would have occurred in Ohio and Pennsylvania.  The only allegation in the Complaint that touches on Colorado is that UMortgage mailed the termination fee from Pennsylvania, to Motto, located in Colorado.  It is well settled that mailing a single payment from out-of-state is plainly insufficient to confer jurisdiction.

For either of these reasons, the Court should dismiss the Complaint.

## BACKGROUND

### A.  UMortgage and Motto.

UMortgage is a Michigan, LLC, with its principal place of business in Philadelphia, Pennsylvania.  Compl. ¶ 9.  UMortgage is a mortgage company that works with its partner loan originators around the country to provide mortgage lending services to the public.  *Id*.  Motto is a Delaware limited liability company, with its principal place of business in Colorado.  Motto is a franchisor of mortgage brokerage services across the United States.  *Id*. ¶ 8.

### B.  The Franchise Agreement, Its Amendments, and the Termination Agreement.

Motto alleges that it entered into a series of amended Franchise Agreements with an Ohio-based entity known as TRB Solutions LTD ("TRB"), culminating, for our purposes, with an agreement on March 7, 2022, with TRB members Breon Price, Leo Grote, Leah Grote, and Keyan

FP 47062371.1

Chang—with Mr. Price serving as the controlling member.  Compl. ¶ 22; *see* Ex. A.[2]  This agreement stated that during the term of the Franchise Agreement, the members of the franchise, including its managers, would not, become, *inter alia,* "an officer, director, shareholder, member, licensee, partner, or manager, of" any other mortgage company. *Id.* ¶ 23.  TRB, and its members, were based in Ohio and to conduct business in Ohio. *Id.*

Absent any factual allegations, the Complaint offers the speculative and conclusory statement that "at some point" in time, in 2022, UMortgage approached Mr. Price, "to solicit and induce" him "to breach the Franchise Agreement and join UMortgage." *Id.* ¶ 28.  Again, in conclusory fashion, Motto claims that "UMortgage was aware of the Franchise Agreement between Motto and TRB and its members" and that UMortgage knew or should have known that "Motto franchisees are not permitted to operate or otherwise have an interest in a competing mortgage company." *Id.* ¶ 30–31.  As alleged, these purported events occurred in Pennsylvania and Ohio.

Motto does not allege that UMortgage somehow convinced Mr. Price and TRB members to abruptly quit Motto and began working for UMortgage.  Nor does the Complaint proffer any factual allegations about UMortgage encouraging TRB to breach the Franchise Agreement.  Rather, Motto concedes that TRB, and its members, went through the appropriate processes.

---

[2] "If a plaintiff does not incorporate by reference or attach a document to its complaint," but the document is referred to in the complaint and is central to the plaintiff's claim, "a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss." *Henson v. Bank of America*, 935 F. Supp. 2d 1128, 1136 (D. Colo. 2013) (quoting *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381 (10th Cir. 1997)); *U.S. Olympic Committee v. American Media, Inc.*, 156 F. Supp. 2d 1200 (D. Colo. 2001) ("When a document is referred to in the complaint and is central to the plaintiff's claim, the court has discretion to consider the document as part of the pleadings.").  Here, the Franchise Agreement and Termination Agreement are central to Motto's Complaint.  The Franchise Agreement is referenced over 40 times and the Termination Agreement 11 times—the entirety of the Complaint is focused on these two Agreements.

FP 47062371.1

Motto admits that TRB and its members contacted Motto and requested an early termination of the Franchise Agreement. *Id*. ¶¶ 34–36. Motto concedes that it and TRB openly negotiated and mutually agreed on the terms of the termination, which both parties signed and entered, including negotiating the termination fee of $172,800. *Id*. ¶¶ 34–37. Motto concedes that this amount was what it deemed sufficient compensation for ending the business relationship. *Id*. ¶¶ 35–41. Indeed, Motto signed the "Termination Agreement" on December 12, 2022, which *explicitly stated* that Mr. Price was leaving Motto to join UMortgage as a branch manager: "Breon Price [is] permitted to be a branch manager of the UMortgage office." *See* Ex. B.

Even more puzzling is that, as alleged, Motto negotiated with Mr. Price, and TRB, knowing that Mr. Price would join UMortgage, negotiated the price it deemed sufficient to compensate it for the termination of the Franchise Agreement, received the money it requested, from UMortgage, *deposited the funds in its account,* and only then decided to sue UMortgage. *Id*. ¶¶ 39–43. Motto's Complaint tells on itself: as a sophisticated business, it believes that it made a poor business decision agreeing to terminate the Franchise Agreement and to let TRB and Mr. Price leave for UMortgage. It is no surprise that UMortgage would advertise its business successes and growth by adding the "top-producing broker," Mr. Price, as "the number one ranked broker in Ohio." *Id*. ¶ 45.

At bottom, Motto has not alleged a single non-conclusory fact in support of its claim for tortious interference against UMortgage. If anything, Plaintiff has alleged a series of manufactured claims that establish only that it is using the legal system for a mulligan, to rectify its decision to let Mr. Price leave. Furthermore, Motto has not alleged any meaningful connection between its allegations against UMortgage and the forum of Colorado, except that UMortgage mailed a check from its offices in Pennsylvania to Motto, located in Colorado.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(2) requires the dismissal of a complaint if a court lacks jurisdiction over a defendant named in that complaint. *See Steel Co. v. Citizens for Better a Env't*, 523 U.S. 83, 103–04 (1998) (holding that a federal court may not rule on the merits of a case without first determining that it has jurisdiction over the parties). "When a defendant files a motion to dismiss under Rule 12(b)(2), the plaintiff bears the burden of establishing personal jurisdiction over that defendant." *Vora v. Dionne*, 2023 WL 1784227, at *2 (D. Colo. Feb. 6, 2023) (citing *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998)), *appeal filed,* No. 23-1090 (10th Cir. Mar. 23, 2023). Further, the Plaintiff "must make this showing with respect to each of claims alleged." *Vora*, 2023 WL 1784227, at *2 (citation omitted).

A Federal Rule of Civil Procedure ("Rule") 12(b)(6) motion tests whether a complaint states a claim that is plausible on its face. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Under Rule 8, while a pleading "does not require 'detailed factual allegations,' [] it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 566 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To "withstand a motion to dismiss, a complaint must contain enough allegations of fact 'to state a claim to relief that is plausible on its face.'" *Mackey v. Hilkey*, 2022 WL 1198002, at *2 (D. Colo. Apr. 22, 2022) (citation omitted). "This means that '[t]he burden is on the plaintiff to frame a complaint with enough factual matter (taken as true) to suggest that he or she is entitled to relief.' 'Factual allegations must be enough to raise a right to relief above the speculative level.'" *Id*. (citations omitted). Plaintiff "must plead more than merely 'labels and conclusions' or 'a formulaic recitation of the elements of the cause of action.'" *Id.* (citation omitted).

FP 47062371.1

**ARGUMENT**

**I.    THIS COURT DOES NOT HAVE GENERAL OR SPECIFIC PERSONAL JURISDICTION OVER UMORTGAGE.**

Motto's Complaint is unclear on whether it alleges that UMortgage is subject to either general or specific jurisdiction in this Court.  Regardless, UMortgage is subject to neither.

To survive a motion to dismiss pursuant to Rule 12(b)(2), Motto must proffer evidence that is enough to support findings of all facts essential to personal jurisdiction.  It is plaintiff's burden to demonstrate the existence of every fact needed to satisfy the requirements of personal jurisdiction.  *J.L. v. Best Western Int'l, Inc.*, 521 F. Supp. 3d 1048, 1074 (D. Colo. 2021) ("[P]laintiff bears the burden of making a prima facie case that he has satisfied statutory and due process requirements so as to permit the court to exercise personal jurisdiction over the defendant.").  To establish personal jurisdiction over UMortgage, Motto must plead—and ultimately prove—facts that satisfy Colorado's long arm statute and the Due Process Clause of the Constitution.  *See Nat'l Business Brokers, Ltd. v. Jim Williamson Prods, Inc.*, 115 F. Supp. 2d 1250, 1253 (D. Colo. 2000), *aff'd*, 16 F.Appx 959 (10th Cir. 2001).  "The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'"  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72 (1985) (citation omitted).  Therefore, a "court may exercise personal jurisdiction over a nonresident defendant only so long as there exist 'minimum contacts' between the defendant and the forum [s]tate."  *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980).

This Court lacks both general and specific jurisdiction over UMortgage.

**A.    The Court Does Not Have General Jurisdiction Over UMortgage.**

6

"A court may assert general jurisdiction over foreign . . . corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State."  *Old Republic*, 877 F.3d at 904 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).  There can be no credible argument that UMortgage's presence in Colorado is so substantial as to render it "at home" in Colorado.

UMortgage, a Michigan limited liability company, with its principal place of business in Philadelphia, Pennsylvania, does not have such "continuous and systematic" ties to Colorado to allow a Colorado court to exercise general personal jurisdiction over the company.  The Complaint alleges simply that UMortgage has Loan Originators that solicit and market business in Colorado. Compl. ¶ 14.  However, as the Supreme Court made clear in *Daimler*, for a corporation to be subject to general jurisdiction, the general test is whether the jurisdiction at issue is the company's "place of incorporation [or its] principal place of business."  *Daimler AG v. Bauman*, 571 U.S. 117, 118 (2014).  Indeed, in *Daimler*, the Supreme Court rejected the notion that a company is subject to general jurisdiction in every State in which a corporation engages in a course of business. *Id*. at 137–38.  Instead, the *Daimler* court promoted the "easily ascertainable" general jurisdiction test of whether a company is either incorporated or principally headquartered in a particular jurisdiction.  *See id*.  This is because "[s]imple jurisdictional rules . . . promote greater predictability."  *Id*.

Motto's own pleading establishes that it has not met this standard.  There are no allegations that support general jurisdiction over UMortgage "in a forum other than its formal place of incorporation or principal place of business."  *Id.* at 139, n.19.  Aside from an exceptional case, a corporation is at home (and thus subject to general jurisdiction, consistent with due process) *only*

in a state that is the company's formal place of incorporation or its principal place of business. *J.L. v. Best Western Intern., Inc.*, 521 F. Supp. 3d 1048, 1069 (D. Colo. 2021) (quoting *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 413 (2017) ("The 'paradigm' forums in which a corporate defendant is 'at home,'… are the corporation's place of incorporation and its principal place of business.")). Motto has not alleged any facts to overcome this hurdle – because no such facts exist.

UMortgage is a Michigan LLC, with its principal place of business in Philadelphia. UMortgage cannot be considered "at home" in Colorado.  *See Daimler*, 571 U.S. at 136 (2014) (quoting *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 929 (2011) (finding no general jurisdiction over a nationwide mortgage company because "subject[ing] foreign corporations to general jurisdiction whenever they have an in-state subsidiary or affiliate [is] an outcome that would sweep beyond even the 'sprawling view of general jurisdiction' we rejected in *Goodyear*.")).

### B.    The Court Does Not Have Specific Jurisdiction Over UMortgage.

Nor has Plaintiff pleaded sufficient facts to support specific jurisdiction over UMortgage in Colorado.  "For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State."  *Walden v. Fiore*, 571 U.S. 277, 238–84 (2014).  "Specific jurisdiction . . . is premised on something of a *quid pro quo*: in exchange for 'benefitting' from some purposive conduct directed at the forum state, a party is deemed to consent to the exercise of jurisdiction for claims related to those contacts."  *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1078 (10th Cir. 2008).  Therefore, "a plaintiff must show that (1) the defendant has purposefully availed itself of the privilege of conducting activities or consummating a transaction in the forum state . . . and (2) the litigation results from alleged injuries that arise out of or relate to those activities."  *White v. Christian*, 474 F. Supp. 3d 1196, 1201 (D. Colo. 2020) (internal quotation marks omitted).

1.     **Motto has not alleged that UMortgage possesses sufficient in-state contacts to have purposefully availed itself of the privilege of conducting activities in Colorado.**

Plaintiff failed to plead facts sufficient to show that UMortgage has sufficient in-state contacts, to have purposefully availed itself of the privilege of conducting activities in Colorado. To satisfy this requirement, Motto must allege that its claims "arise out of the defendant's forum-related activities." *Dental Dynamics, LLC v. Jolly Dental Group, LLC*, 946 F.3d 1223, 1229 (10th Cir. 2020). "The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. at 283–84 (2014). The Tenth Circuit rejects the exercise of personal jurisdiction when the connection between the cause of action and the defendant's forum-state contacts seem attenuated and indirect. *See Dudnikov*, 514 F.3d at 1071 ("an out-of-state defendant is not bound to appear to account for merely . . . attenuated contracts with the forum state."). Rather, the defendant's in-state conduct must form an important, or at least material, element of the proof in the plaintiff's case. *See Old Republic*, 877 F.3d at 905.

Motto's claims—and conclusory allegations in support of those claims—have little to do with Colorado. It is no surprise, then, that UMortgage lacks sufficient contacts to satisfy the jurisdictional inquiry. Indeed, Motto alleges a single relation with the forum-state: that UMortgage mailed a check, from Pennsylvania to Motto, located in Colorado, pursuant to the termination agreement between Motto and TRB, which Motto negotiated with an Ohio-based non-party, TRB. This single act conducted on behalf of TRB and Mr. Price, neither of whom is a party to this litigation, is insufficient to haul UMortgage before a Colorado court. It is well settled that the mailing of a single check, or a single payment, "is insufficient" to establish specific jurisdiction—and Plaintiff alleges nothing more. *See e.g., Farkas v. Rich Coast Corp.*, 2014 WL 550594, at *17 (W.D. Pa. Feb. 11, 2014); *Hampton-Meridian Grp., Inc. v. Venturella,* 2008 WL 2446697, at *6

(W.D. Pa. June 16, 2008) ("It is well settled that a single payment alone is not sufficient to subject a defendant to personal jurisdiction."); *Time Share Vacation Club v. Atlantic Resorts Ltd., 735 F.2d 61, 65–66, n. 7 (3d Cir. 1984)* ("A unilateral activity . . . cannot satisfy the requirement of contact with the forum State."); *Pilgrim's Pride Corp. v. ASFI, Inc.*, 2006 WL 984695, at *2–3 (E.D. Tex. Apr. 13, 2006).

"Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the . . . attenuated contacts he makes by interacting with other persons affiliated with the State." *Walden v. Fiore*, 571 U.S. at 286 (internal quotation marks omitted). These are precisely the types of attenuated and insufficient allegations that are incapable of clearing the constitutional hurdles in place to protect UMortgage.

## 2. Motto's alleged injury does not arise out of UMortgage's alleged activities in Colorado.

Motto has not alleged nonconclusory, factual allegations, to support that its alleged injury arose from UMortgage's alleged suit-specific activity in Colorado. Indeed, none of UMortgage's alleged "suit-related conduct" creates a "substantial connection" to Colorado. *Walden*, 571 U.S. at 284. Motto's Complaint alleges, in barebones fashion, an interaction between UMortgage, located in Pennsylvania, and a mortgage broker, Mr. Price, operating in Ohio. Plaintiff does not allege *any* conduct occurring in Colorado, other than the single act of mailing a check to Motto, in satisfaction of the Termination Agreement to which UMortgage is not a party. As discussed, this is plainly insufficient to confer specific jurisdiction over UMortgage. *See Supra*, Section I.B.1. At no point in the interactions between UMortgage or Mr. Price did UMortgage interact with, avail itself of, or benefit from any connection to Colorado. Simply put, this suit does not have the "continuous and systematic" connections to Colorado that could justify requiring UMortgage to defend itself in a Colorado court.

## II.   THE COMPLAINT FAILS TO STATE A CLAIM FOR TORTIOUS INTERFERENCE.

Motto fails to adequately plead that UMortgage tortiously interfered with a contract between Motto and Mr. Price.  In particular, Plaintiff does not sufficiently allege that UMortgage intentionally procured a breach of the Franchise Agreement, that there was an actual breach of a contract, or that UMortgage acted improperly.  For any—or all—of these reasons, the Court should dismiss Motto's Complaint in its entirety.

Sections 766–768 of the Second Restatement of Torts govern the requirements for tortious interference.[3]  *Nobody in Particular Presents, Inc. v. Clear Channel Commc'ns, Inc.*, 311 F. Supp.2d 1048, 1115–1116 (D. Colo. 2004) (citing RESTATEMENT (SECOND) OF TORTS § 766–768) (Am. L. Inst. 1979).   Tortious interference occurs when one "intentionally and improperly interferes with the performance of a contract between another and a third person by inducing or otherwise causing the third person not to perform the contract."   RESTATEMENT (SECOND) OF TORTS § 766 (Am. L. Inst. 1979); *Nobody in Particular Presents, Inc., Inc.*, 311 F. Supp.2d at 1048.

As the Court stated in *Best Beach Getaways LLC v. TSYS Merchant Solutions, LLC*, "[i]n order to establish tortious interference" a plaintiff "must show: (1) the plaintiff had a contract with another party; (2) the defendant knew or should have known of such contract's existence; (3) the defendant intentionally induced the other party to the contract not to perform the contract with the plaintiff; and (4) the defendant's actions caused the plaintiff to incur damages."   2020 WL

---

[3] We look to the forum court's choice-of-law rule to determine which state's tortious interference standard applies. *Hamric v. Wilderness Expeditions, Inc.*, 6 F.4th 1108, 1126 (10th Cir. 2021).  "Any conflict of laws analysis begins, perforce, with a determination whether a conflict actually exists. 'If there is no such conflict, there is no such choice of law issue, and the forum state's law applies.'" We do not – at this stage – argue about whether Colorado law or Ohio law should govern.  However, regardless of how a choice-of-law analysis would conclude, both Ohio and Colorado adopt the Second Restatement of Torts.  *See e.g. Fred Siegel Co., L.P.A. v. Arter & Hadden*, 707 N.E.2d 853, 858, 860 (Ohio Sup. Ct. 1999) (citing RESTATEMENT (SECOND) OF TORTS § 766 (Am. L. Inst. 1979)).

7182776, at *4–5 (D. Colo. Dec. 4, 2020) (quoting *Lutfi v. Brighton Cmty. Hosp. Ass'n,* 30 P.3d 51, 58 (Colo. App. 2001)).  Critically, "[f]or the third element, the interference must be 'both intentional and improper.'"  *Best Beach Getaways LLC*, 2020 WL 7182776, at *4–5.  And, "[f]inally, in order to assert a claim of tortious interference, there must be a breach of contract." *Id.*; *see Hertz v. Luzenac Grp.*, 576 F.3d 1103, 1118 (10th Cir. 2009).  Plaintiff's Complaint fails because it lacks any factual allegations about contact between UMortgage and any members of TRB, let alone allegations to sufficiently plead the requisite elements.

Plaintiff has failed to adequately plead that UMortgage intentionally procured a breach of the Franchise Agreement; that there was actually a breach of that agreement; or that UMortgage acted improperly.  *Best Beach Getaways*, 2020 WL 7182776 at *4–5.  Accordingly, Plaintiff's tortious interference claim must be dismissed.

### A.   Motto's Complaint Must Be Dismissed Because It Has Not Pled That UMortgage Intentionally Procured A Breach Of The Franchise Agreement.

Motto never alleges that TRB, or any TRB members, breached the Franchise Agreement or any of its amendments.  *See generally,* Compl.  That is because no breach occurred.  Nor has plaintiff alleged any non-conclusory or non-speculative, allegations that UMortgage intended to cause TRB and its members to breach the Franchise Agreement.  Plaintiff's failure to plead this essential element of its only cause of action requires its dismissal.

A plaintiff must do more than simply allege that a defendant intended to cause a breach of a contract—there must be facts alleged behind a plaintiff's own, subjective, unsupported belief to support an accusation of intent.  *See Nobody*, 311 F. Supp. 2d, at 1117 n. 10 (noting that evidence set forth was "merely conclusory allegations about interference and [did] not point to admissible evidence proving the elements of the claim").  Plaintiff has not done so.  In total, Plaintiff has alleged the following:

- "[A]t some point in the latter half of 2022, UMortgage approached TRB and Breon Price to solicit and induce Breon Price to breach the Franchise Agreement and join UMortgage." Compl. ¶ 28.

- "Upon information and belief, UMortgage was aware of the Franchise Agreement between Motto and TRB and its members during the timeframe in which UMortgage solicited and induced TRB and its members to join UMortgage." Compl. ¶ 30.

- "UMortgage was aware, or reasonably should have known, that Motto franchises are not permitted to operate or otherwise have an interest in a competing mortgage company . . . ." Compl. ¶ 31.

- "Despite this knowledge, UMortgage interfered with the Franchise Agreement." Compl. ¶ 32.

Motto does not offer a single, non-conclusory, factual allegation to support its claim that UMortgage intentionally procured a breach of the Franchise Agreement. Plaintiff does not allege anything more, such as facts about actual contact between UMortgage and TRB, or the thought process of any decision-makers at UMortgage; facts that UMortgage convinced Mr. Price and others to join UMortgage, or facts that UMortgage had recruiters solicit TRB employees. *FidoTV Channel, Inc. v. Inspirational Network, Inc.*, 2019 WL 4043940, at *8 (D. Colo. Apr. 29, 2019) (dismissing tortious interference claim where, as here, "there are no factual allegations *as to how*" the defendant allegedly tortiously interfered). In *FidoTV*, the court noted that plaintiff simply offered "only conclusory allegations that Defendants 'intentionally interfered'" with FidoTV continuing its distribution arrangements. *Id.* And, the court held, such allegations "are insufficient to plead a plausible tortious interference claim." *Id.* So too here, where Motto has only offered four wholly conclusory, boilerplate statements that "UMortgage interfered with the Franchise Agreement." Compl. ¶ 32.

Motto's additional conclusory allegations that "at some point in the latter half of 2022, UMortgage unlawfully solicited and induced TRB controlling member Breon Price to join UMortgage" are also conclusory and insufficient to support any cause of action. Compl. ¶ 28; *see*

13

*Eagle Valley Clean Energy, LLC v. Wellons, Inc.*, 2019 WL 427609, at *5 (D. Colo. Feb. 4, 2019) (finding conclusory allegations "pled only on information and belief" to be insufficient).

Indeed, the Complaint, on its own terms, directs the Court to dismissal. Assuming Motto's retelling of the events is true, the result of UMortgage's purported "approach" to TRB was: TRB "requested an early termination of the Franchise Agreement" which was duly and appropriately negotiated between Motto and TRB and "entered into [] on December 12, 2022." Compl.¶ 34–35. In Motto's own story, it *chose* to let TRB and its members leave the franchise; it *chose* to let Mr. Price join UMortgage; and expressly signed on to language in the Termination Agreement stating that Mr. Price would join UMortgage—and that it would be compensated in the amount of $172,800. All Plaintiff has alleged, assuming Motto's facts as true, is that it and TRB, two sophisticated parties, mutually agreed, with the benefit of outside counsel, to enter negotiations and ultimately terminate their arrangement. Motto has *not alleged* any facts concerning UMortgage, and as such, requires dismissal of the Complaint. *Storlie v. Prudential Ins. of America*, 2020 WL 209859, at *3 (D. Colo. Jan. 14, 2020) (dismissing plaintiff's tortious interference claim where plaintiff "fail[ed] to allege any specific occurrence in which Defendant's conduct interfered").

## B. Motto's Complaint Must Be Dismissed Because It Never Alleges An *Actual Breach* Of The Franchise Agreement.

"A claim for tortious interference with a contract 'requires the plaintiff to prove, as an element, an actual *breach* of contract.'" *BCG Masonic Cleveland, LLC v. Live Nation Ent. Inc.*, 570 F. Supp. 3d 552, 558 (N.D. Ohio 2021); *Radiology Pro. Corp. v. Trinidad Area Health Ass'n, Inc.*, 577 P.2d 748, 751 (Colo. 1978) (en banc); *Phillips v. Carpet Direct Corp.*, 2017 WL 121630, at *3 (D. Colo. 2017). A breach of contract claim generally requires that one plead "(1) that a contract existed, (2) that the plaintiff fulfilled his obligations, (3) that the defendant failed to fulfill

his obligations, and (4) that damages resulted from this failure." *BCG Masonic Cleveland*, 570 F. Supp. 3d at 560.

Motto does not allege a breach of any agreement in its Complaint. The Complaint never claims, even in conclusory fashion, that TRB or Mr. Price breached the Franchise Agreement—because it cannot. Motto's alleged actions prevent any such pleading, because, again, it chose to terminate the Franchise Agreement. *Phillips*, 2017 WL 121630, at *3 (noting that a plaintiff could not recover for tortious interference with contract where no agreement had been breached); *Radiology Pro. Corp*, 577 P.2d at 751 (same). Rather than allege a breach, instead, Motto actually pleads the opposite. Motto states that TRB's members contacted Motto about terminating the agreement; that the parties chose to mutually negotiate a contract defining the terms of that termination; and that termination agreement expressly permitted Mr. Price to work as a Branch Manager for UMortgage. *See* Ex. B ("Breon Price [is] permitted to be a branch manager of a UMortgage office."). Far from alleging a breach of any kind, Motto alleges that "TRB agreed 'to pay Motto the sum of $178,000.00' in one lump sum payment by December 16, 2022," in exchange for the early termination of the Franchise Agreement. Compl. ¶ 34–37.

By mutually and formally terminating the Franchise Agreement, Motto left no possibility for TRB or its members to breach the Franchise Agreement. *Id*. ¶ 34. And, though complaints must contain "more than labels and conclusions," Plaintiff fails to even plead in a conclusory fashion that TRB or its members violated the Franchise Agreement. *Twombly*, 550 U.S. at 555.

### C.   Motto's Complaint Must Be Dismissed Because It Does Not Allege That UMortgage Acted Improperly.

Plaintiff also fails to allege the essential element that UMortgage acted improperly. Even assuming that UMortgage *did* intentionally procure a breach of the Franchise Agreement, which it

15

did not, and even assuming that TRB actually breached the Franchise Agreement, which it did not,

the Complaint does not adequately allege that UMortgage acted improperly.

Not all interference with a contract is actionable: only "improper interference" is actionable

under tortious interference—this is in an effort to protect parties "ability to engage in business and

compete with others." *Harris Group, Inc. v. Robinson*, 209 P.3d 1188, 1196 (Colo. App. Div. VI

2009); *see also Eagle Valley Clean Energy, LLC*, 2019 WL 427609 at *5 (finding plaintiff's

"allegations to support" that defendant acted "improperly" were "conclusory" and "only repeat the

legal standard").

Plaintiff has not alleged *any* factual allegations to support that UMortgage acted

improperly.  Motto's Complaint offers nothing but conclusory allegations that parrot the elements

of the cause of action.  In total, Plaintiff alleges two boilerplate statements regarding UMortgage's

improper conduct:

- "UMortgage intended to induce TRB and its members to breach the Franchise Agreement by recruiting them to impermissibly operate or otherwise be involved with a competing mortgage company[.]" Compl. ¶ 51.

- "UMortgage's interference was improper, as it did result in TRB and its members terminating the Franchise Agreement." Compl. ¶ 52[4];

"These conclusory allegations only repeat the legal standard." *Eagle Valley Clean Energy*, 2019

WL 427609, at *5.  In *Eagle Valley*, the plaintiff offered "[m]ore specific" allegations, than Motto

does here, such as "that defendants disparaged" plaintiff "or disclosed [plaintiff's] confidential

information," but because those were "pled only on 'information and belief'" this was insufficient.

*Id*.  So too here.  Motto has not provided factual allegations to support any claim that UMortgage

acted improperly—and other conclusory statements are also pled only on "information and belief."

---

[4] In stating that "TRB and its members terminat[ed] the Franchise Agreement," Motto omits that *it negotiated and agreed to that termination*, including permitted Mr. Price to work specifically for UMortgage.  *See Supra* Section II.B.

The Complaint, yet again, directs the Court to dismissal.  In addition to not pleading any of the abovementioned factors, Plaintiff has alleged evidence that directly contradicts any "improper" behavior.  And, in Colorado "[i]nterference with a contract is not improper when it involves a matter of competition between the parties."  *Nobody in Particular Presents*, 311 F. Supp. 2d at 1115.  Thus, even assuming such intentional interference by UMortgage, which Plaintiff has wholly failed to allege, intentionally causing a breach of a contract is not "improper" if: "(1) it concerns a matter of competition between the defendant and plaintiff; (2) the defendant does not employ wrongful means; (3) the action does not amount to an unlawful restraint of trade; and (4) the defendant's purpose is, at least in part, to advance its own interest."  *Id.*.

Motto states four times, throughout its Complaint, that UMortgage is its direct competitor.  Not only are they in the same business, but they compete for the same brokers, especially those that are accomplished.  *Cf. Nobody in Particular Presents*, 311 F. Supp. 2d at 1116 (finding an interference concerned a matter of competition because the plaintiff and defendant "compete for concert promotions employees with have significant contacts in the music industry.").

Additionally, Plaintiff also did not allege that UMortgage used wrongful means, nor did UMortgage actually use wrongful means, in hiring Mr. Price.  *See Phillips*, 2017 WL 121630, at *13 ("'Wrongful means' include[s] physical violence, fraud, civil suits, and criminal prosecutions."); *Nobody in Particular Presents*, 311 F. Supp. 2d at 1116 (noting that even if the employee had "snuck into the [plaintiffs] offices at night and removed various files improperly, plaintiff [had] set forth no evidence that [defendant] directed this behavior or utilized any other wrongful means in hiring the [employee]").  Furthermore, Plaintiff has not alleged that UMortgage acted in a way that amounted to unlawful trade in hiring Mr. Price, nor did UMortgage's hiring actually amount to unlawfully restrained trade.  This Court has previously declared that "hiring

one employee away from a competitor does not amount to a restraint of trade because it does not injure competition." *Nobody in Particular Presents*, 311 F. Supp. 2d at 1116.   Therefore, UMortgage hiring Mr. Price was neither wrongful nor an unlawful restraint of trade.

Finally, hiring Mr. Price was solely to advance UMortgage's own business interest of generating greater revenue by having a bigger business with successful employees. *Cf. Nobody in Particular Presents*, 311 F. Supp. 2d at 1116 (finding that defendants "purpose was to advance its own interest because [the employee] has many contacts in the music industry that might be utilized by [defendant]").   In fact, Plaintiff, once again, directly writes in the Complaint that this was UMortgage's alleged purpose; the Complaint states that "according to UMortgage, TRB member Breon Price [] was the number-one ranked mortgage broker in Ohio in 2022," and that "UMortgage 'brought on . . . top-producing broker[] Breon Price—the number one ranked broker in Ohio . . . sending shockwaves through the mortgage industry.'"   Compl. ¶ 4, 45.   Therefore, UMortgage's alleged contractual interference concerns a matter of competition, and is thus not improper.

In conclusion, for a myriad of reasons, as detailed, Motto has not sufficiently pled that if UMortgage did interfere with Plaintiff and TRB's Franchise Agreement, let alone that such interference was improper and done through  wrongful means. *See Phillips*, 2017 WL 121630, at *13 (granting a motion to dismiss when plaintiff did not allege that defendant had engaged in "physical violence, fraud, civil suits, or criminal prosecutions, the brokerage, as alleged, [did] not amount to an unlawful restraint of trade, and the allegations demonstrate [defendant's] purpose is to advance his own interest (i.e., make more money)").

18

## CONCLUSION

For the foregoing reasons, the Court should dismiss Motto's Complaint either for lack of personal jurisdiction or for failure to state a claim against UMortgage.


DATED:  May 8, 2023                    Respectfully submitted,



/s/ Kristin R.B. White
Kristin R.B. White
**FISHER & PHILLIPS LLP**
1125 17th Street
Denver, CO 80202
(303) 218-3658
kwhite@fisherphillips.com

Marcia E. Goodman (Admission pending)
**MAYER BROWN LLP**
71 South Wacker Drive
Chicago, IL 60606
(312) 782-0600
mgoodman@mayerbrown.com

David J. Lizmi
**MAYER BROWN LLP**
1221 Avenue of the Americas
New York, NY 60606
(212) 506-2500
dlizmi@mayerbrown.com

*Counsel for Premier Processing, LLC d/b/a*
*UMortgage, LLC*

FP 47062371.1

**CERTIFICATE OF SERVICE**

I hereby certify that on May 8, 2023, I caused a true and correct copy of the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, which serves a copy on all counsel of record registered for electronic filing in this matter.


*/s/* Kristin R.B. White

20